

FILED

MAR 1 2 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.

ROBERT CLAYTOR FORREST

Case No. 4:24mj 13

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Wesley D. Magnuson, being first duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a complaint and arrest warrant under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure.

2. I am a Special Agent (SA) with the U.S. Department of Veterans Affairs ("VA"), Office of Inspector General ("VA-OIG") and have been so employed since June 2021. Prior to employment with VA-OIG, I was employed as a Police Officer with the United States Department of Defense, Commander, Naval Installations Command, from October 2018 to June 2021. Your affiant is a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the Uniformed Police Training Program, both in Glynco, Georgia. I have also received additional training and have experience in criminal investigations. I have a Bachelor of Arts degrees in criminal justice and psychology. I am currently assigned to the VA-OIG Mid-Atlantic Field Office, Washington, District of Columbia. As such, part of my duties include investigating crimes committed against programs and operations of VA by employees and non-employees, as well as allegations of serious violations of policies and procedures by high-ranking members

1

at VA.  These duties also include investigating matters related to persons who knowingly and willingly commit criminal acts against the United States.

3.      As a result of my training and experience, I am familiar with federal and state criminal laws that protect federal employees and know that it is a violation of the Code of Virginia § 18.2-427 for any person to use obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass any person, over any telephone, pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13.

4.      The information contained in this affidavit is based on my personal knowledge of, and involvement in, this investigation as well as other facts and information provided to me by other law enforcement officers involved in this investigation. I am thoroughly familiar with the information contained in this affidavit through personal exposure to the records and reports, and through discussions with other law enforcement personnel.

5.      The facts set forth below are true and correct to the best of my knowledge. Because this affidavit is being submitted for the limited purpose of supporting a federal criminal complaint and arrest warrant for the defendant, this affidavit does not purport to set forth all the facts and circumstances known to me about this matter. Instead, this affidavit sets forth only those facts which I believe are necessary to support a finding of probable cause to believe that the defendant committed the charged offense.

## **PROBABLE CAUSE**

6.      In February 2024, VA OIG agents and the VA Police Service opened an investigation into threatening telephone communications made to VA employees by an

2

individual identified as **ROBERT CLAYTOR FORREST ("FORREST")**, a United States Army Veteran who utilizes the VA's services.

7.      Records showed that on or about January 9, 2024, **FORREST** suffered a brain bleed and was transferred from the Hampton VA Medical Center in Hampton, Virginia, located within the Eastern District of Virginia, to the Naval Medical Center, Intensive Care Unit (ICU), in Portsmouth, Virginia, located within the Eastern District of Virginia, for additional treatment and surgery.

8.      On January 9, 2024, according to a Report of Investigation provided by the Naval Criminal Investigative Service (NCIS), while being treated at the Naval Medical Center in Portsmouth, Virginia, **FORREST** stated his wife was going to come and give him his gun, and he was going to shoot the entire ICU staff. According to the report, **FORREST** asked a U.S. Navy nurse "whether or not she wanted to be shot in the head or in the chest." In response, the Hampton Police Department conducted a welfare check at **FORREST**'s residence, but his spouse was not located.

9.      On January 9, 2024, according to an NCIS report, NCIS interviewed **FORREST** admitted to making threatening remarks and claimed ICU staff were attempting to "drill a hole in his head" to change him in some capacity.

10.     On January 10, 2024, according to an NCIS report, NCIS interviewed **FORREST** a second time after ICU staff reported a dramatic change in FORREST's demeanor following the incident the prior day. According to the report, "R.FORREST was apologetic to staff and reported he did not wish to harm anyone. Dr. LEFEVER reported plans for R. FORREST's surgery were back in effect and advised no further safety concerns." During the second NCIS interview, **FORREST** was apologetic for his remarks and relayed

3

he was feeling disoriented at the time of his statements. **FORREST** explained that he had fallen and struck his head while at home in Hampton, Virginia. In response to the threats made by **FORREST**, the U.S. Navy barred him from the installation on February 21, 2024.

11.     On February 5, 2024, at approximately 12:15 P.M., **FORREST** called the Hampton VA Medical Center from telephone number (757) 696-3094, which is the same telephone number associated with his Veteran Benefit Management System account. **FORREST** was transferred to a Medical Support Assistant employed by VA at the Clinical Contact Center, Veterans Integrated Services Network Six. During the audio recorded telephone call, **FORREST** identified himself by name, date of birth, and the last four digits of his social security number. **FORREST** asked for Doctor A.O., by mentioning the doctor's last name and the first letter of the doctor's first name. A.O. is a medical physician employed by the VA at the Hampton VA Medical Center. **FORREST** told the Medical Support Assistant that Doctor A.O. operated on him the prior month and he reported that his "whole left side going dead, again." **FORREST** stated, "He operated on me at the VA. I don't know why. But to find out why, I'm gonna have to get my dang ole shotgun, and I'm gonna find out why he's doing all this stuff." When asked to hold tight for a moment, **FORREST** stated, "…I'm gonna get on my damn car and come get my shotgun, and we're gonna find out what the hell the doctor's doing." The VA employee told **FORREST** not to do that, to which he replied, "You wanna bet? You wanna bet I won't do it? I'm a, I'm a country boy, you ain't gonna get me in no trouble. You gonna get him dead is what he's gonna get."

12.     **FORREST**'s telephone call was transferred to a Registered Nurse employed by the VA at the Clinical Contact Center. **FORREST** again confirmed his name, date of birth, and the last four digits of his social security number, and then told the employee that

4

he was at his residence on Victoria Boulevard in Hampton, Virginia. **FORREST** stated, "I want to know where the stupid doctor's at, so I can take, put him, put him in the bed, for the rest of his life." When the VA employee referenced ensuring that **FORREST** was safe, he replied, "I'm safe. I'm home with my wife right now. But he ain't gonna be safe much longer. I wanna know where the hell he's at and what the hell he's doing. He's the one that operated on me." **FORREST** continued, "I'm getting tired of all these stupid questions you'll keep giving me. I want to know where the stupid doctor's at so I can get my hands on him." When the employee asked **FORREST** if he had weapons, he replied, "Yeah I got weapons. Everybody's got weapons. Don't worry, I aint gonna shoot myself. I'm gonna shoot him." When the employee expressed concern, **FORREST** stated, "Why? Nobody tells me where he's at. He's at the VA hospital somewheres."

13.     In response, the Hampton Police Department conducted a welfare check at **FORREST**'s residence. According to records provided by the Hampton Police Department, **FORREST** told officers "that he was frustrated due to no one wanting to fix his hand." Officers advised **FORREST** of the law related to making threats over the airway.

14.     On February 14, 2024, VA-OIG special agents interviewed **FORREST** at his residence about his threats to VA employees. **FORREST** told agents that he owned multiple weapons, specifically handguns, which were stored inside his residence. **FORREST** expressed displeasure with a VA doctor who he claimed performed surgery on him. When agents asked **FORREST** about his threatening statements, he stated, "I just thought I'd put something into his butt to make him do something, think about something." When asked specifically if he remembered talking to an employee on the VA nurse line, **FORREST** stated, "Yeah... I shook her up pretty good." Agents warned **FORREST** that he cannot make

threatening statements because it causes panic and he needed to be on his best behavior. Agents also warned **FORREST** that they were working with the U.S. Attorney's Office and that continued threats would require intervention, which would mean arrest.

15. On February 23, 2024, according to a report provided by NCIS, despite prior warnings about him making threats and being barred from the installation, **FORREST** called the Naval Medical Center, Emergency Department, in Portsmouth, Virginia, when he stated, "I would like some damn answers or I'm going to come down and shoot y'all." When personnel called him back later the same day, **FORREST** stated, "I'm going to put the doctor in front of a sixteen-inch gun and pull the trigger. I wouldn't use a shot gun, it would kill you too fast. Do you want to get shot in the chest?" In response, the Hampton Police Department responded to **FORREST**'s residence. According to records provided by the Hampton Police Department, officers spoke to **FORREST** who mentioned serving in the Vietnam War and mentioned his head wound.

## CONCLUSION

16. Based on the foregoing, your affiant asserts that there is probable cause to believe that on or about February 5, 2024, **ROBERT CLAYTOR FORREST**, did threaten to assault and murder O.A., a doctor with the Department of Veteran Affairs, as described in Paragraphs 11 and 12 above, an illegal and immoral act, by using obscene, vulgar, profane, lewd, lascivious, or indecent language with the intent to coerce, intimidate, and harass a person over a telephone, in violation of the Code of Virginia § 18.2-427 pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13. Accordingly, I respectfully request that a federal arrest warrant be issued for **ROBERT CLAYTOR FORREST**.

6

Respectfully Submitted,

Wesley D. Magnuson
Special Agent
U.S. Department of Veterans Affairs
Office of Inspector General - CID

Subscribed and attested to on March 12, 2024.

THE HON. LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

7